BERTHA CHISHOLM & others[1] *vs.* CITY COUNCIL OF LYNN & others.[2]

Essex.   May 7, 1975. — July 7, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Rent Control,* Revocation of acceptance by municipal corporation. *Municipal Corporation,* Rent control.  *Lynn.*

Under the provision of § 2 of the rent control act, St. 1970, c. 842, that a city or town which has accepted the act "may, in like manner, revoke its acceptance," an order by the city council of Lynn in 1974 abolishing rent control was "in like manner" to an order by the city council passed in February, 1972, accepting the act, and was an effective revocation of acceptance, notwithstanding an affirmative referendum vote in the city in November, 1972, to the question whether rent control should "be continued," placed on the ballot pursuant to St. 1972, c. 625, which expressly stated that upon an affirmative vote rent control should be continued "subject to the provisions of" St. 1970, c. 842.  [312-315]

BILL IN EQUITY filed in the Superior Court on June 17, 1974.

The case was heard by *Nelson,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Jeffrey P. Petrucelly (John J. Ford & Gerald Rodman* with him) for the plaintiffs.

*Nicholas J. Curuby (John T. Ronan* with him) for the defendants.

KAPLAN, J.   Four low-income residents of the city of Lynn occupying apartments as tenants brought this

---

[1] Jacqueline Atwood, Louise Boswell, and Benjamin Tevrowsky.

[2] The mayor of Lynn and the executive director of the Lynn rent control board.

action against the mayor and members of the city council of Lynn and the executive director of the Lynn rent control board. They sought a declaration, in effect, that rent control under St. 1970, c. 842, was still in force in Lynn and had not been terminated by an order of the city council passed on June 4, 1974, and approved by the mayor on June 12, 1974. Lynn Rental Housing Association, Inc., came into the action as an intervener on the side of the defendants. There was a real controversy between the parties, and the plaintiffs showed probable hurt to themselves if they should lose the benefits of rent control. After the action was at issue on the amended complaint and answer, it was tried in the Superior Court on the basis of a statement of agreed facts, and it is here on direct appellate review of a judgment for the defendants dismissing the complaint on findings of fact and conclusions of law.

On August 31, 1970, the Governor approved St. 1970, c. 842, "An act enabling certain cities and towns to control rents and evictions," commonly called the rent control act.[3] Section 2 provides: "This act shall take effect in any city and in any town with a population of fifty thousand or over, on the thirtieth day following acceptance of its provisions. A city or town . . . may, in like manner, revoke its acceptance." The procedure for acceptance was not prescribed by the act, but follows G. L. c. 4, § 4, that is, in the case of a city, by vote of the city council, subject to charter provisions.[4]

---

[3] The act was analyzed and its provisions held constitutional in *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686 (1971). It was to expire by its terms on April 1, 1975, but was extended by St. 1974, c. 360, to the end of 1975.

[4] General Laws c. 4, § 4, states: "Wherever a statute is to take effect upon its acceptance by a city, town, or district, or is to be effective in cities, towns, or districts accepting its provisions, such acceptance shall, except as otherwise provided in such statute, be, in a city, by vote of the city council, subject to the provisions of the charter of such city, in a town, by vote of the town at a town meeting or, in a district, by vote of the district at a district meeting."

After a public hearing, the city of Lynn accepted the rent control act by an order of the city council passed on February 22, 1972, and approved by the mayor on April 4, 1972. This states: "Ordered that the City of Lynn accept the provisions of Chapter 842 of the Acts of 1970." The order goes on: "That the City Council petition the State Legislature for the right to have the question of the further continuance of Rent Control in Lynn placed on the November, 1972 ballot to be voted upon by the people of Lynn."[5] On such petition,[6] the General Court enacted St. 1972, c. 625 (approved on July 9, 1972). This authorized a referendum vote. We set out the text of c. 625 in full:

"Notwithstanding the provisions of chapter eight hundred and forty-two of the acts of nineteen hundred and seventy, the following question shall be placed upon the official ballot to be used at the state election to be held in the current year: —

"'Shall rent control be continued in the city of Lynn? Yes. ☐ No. ☐'

"If a majority of the votes cast on said question is in the affirmative, rent control shall be continued in said city

---

[5] The entire text of the order is as follows: "Ordered that the City of Lynn accept the provisions of Chapter 842 of the Acts of 1970:

"2. That this Act will be administered by a Rent Control Board.

"3. That the appointments to the Rent Control Board will be subject to confirmation by the City Council.

"4. That the rules and regulations under which the Rent Control Board shall operate will be subject to approval by the City Council.

"5. That if any provision of this Order or the applications of such provision to any person or circumstance shall be held invalid, the validity of the remainder of this Order and the applicability of such provision to other persons or circumstances shall not be affected thereby.

"6. That the City Council petition the State Legislature for the right to have the question of the further continuance of Rent Control in Lynn placed on the November, 1972 ballot to be voted upon by the people of Lynn."

[6] Presumably under art. 89 of the Amendments to the Constitution of the Commonwealth (Home Rule Amendment), § 8.

subject to the provisions of said chapter eight hundred and forty-two, and if a majority of the votes cast on said question is in the negative, rent control shall be discontinued in said city forthwith." The referendum was duly held on November 7, 1972, and resulted in a vote of 22,000 to 15,000 in favor of continuing rent control in the city.

Rent control continued in Lynn until mid-1974. On June 4, 1974, a successor city council adopted by majority vote an order which in terms abolished rent control, the mayor giving his approval on June 12, 1974.

The plaintiffs in the present action contend that the order of June 4, 1974, did not accomplish termination of local rent control; their opponents argue, to the contrary, that the order was an effective revocation of acceptance as contemplated by § 2 of the rent control act. We think, agreeing with the judge of the Superior Court, that the latter position is plainly correct.

Section 2, as we have indicated, contemplates acceptance of the act in a city by vote of the city council and revocation of acceptance "in like manner." The city of Lynn did so accept the act and subsequently revoke its acceptance, and that is the end of the matter, unless the referendum of November 7, 1972, made a difference. We think it did not. Statute 1972, c. 625, authorizing the referendum, states expressly that if the referendum is favorable to the continuance of rent control, it shall be continued "subject to the provisions of . . . [St. 1970, c. 842]," and so we are brought back to § 2.

The plaintiffs assert at some length that the referendum was more than an expression of sentiment by the voters of Lynn: if the referendum had come out the other way, rent control would have been at an end in Lynn without the need for any action by the city council. This proposition may be granted, but it does not advance the plaintiffs' cause. In fact the vote was affirmative, and so the basic rent control act continued to apply in Lynn,

including the method of revocation of rent control described in § 2 of c. 842.

At some points the plaintiffs appear to argue that rent control under the basic act was "accepted" in Lynn by means of the city council order plus the referendum, or, perhaps, by the referendum alone, and revocation "in like manner" therefore means action that must include a referendum (or, possibly, some other popular vote). There is no foundation for this argument. Rent control was accepted by the order of February 22, 1972; the referendum was directed to the question of continuance, not acceptance.[7]

The plaintiffs suggest a more generalized or abstract argument, namely, that as a popular vote was once taken which supported rent control, it is only fair that termination of rent control should not occur without some similar expression of public opinion. The suggestion finds no basis in the legislation, State and local, that is here for interpretation and on which our decision must rest. We agree with the judge of the Superior Court that the plaintiffs and the other "anguished residents of Lynn" aligned with them have no remedy by litigation. Rather the means of retaining or reestablishing rent control in Lynn is "political and legislative."

*Judgment affirmed.*

---

[7] So also there is no merit in a contention that revocation must be preceded by a public hearing because such a hearing preceded the order of February 22, 1972. The hearing was not a required part of the procedure for the adoption of the order.